**Eliana SALOME, Petitioner,**

v.

**John D. ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–1643.

United States Court of Appeals,
Third Circuit.

Argued Nov. 16, 2004.

Decided Dec. 2, 2004.

Alfonso Caprara, Philadelphia, PA, for Petitioner.

Terri J. Scadron, John M. McAdams, Jr., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before ROTH, SMITH and WEIS, Circuit Judges.

## OPINION

WEIS, Circuit Judge.

Petitioner appeals the Final Removal Order issued by the BIA on February 5, 2002 denying her application for termination of deportation and suspension of deportation.

Petitioner was born in El Salvador and entered the United States as a student in 1981. Shortly thereafter, petitioner submitted, but did not complete, an asylum application. In 1987, she applied for permanent resident status based on her alleged marriage to an American citizen. Shortly thereafter, her putative husband withdrew his support of the petitioner's application and reported to the INS examiner in California that the marriage was a sham. The examiner did not take action to remove petitioner from the United States at that time, but informed her that, although the sham marriage made her ineligible to ever receive a visa, she could file for amnesty.

Following her unsuccessful attempt to gain permanent resident status, petitioner moved to Pennsylvania and submitted an application for temporary resident status. She indicated on the application that she had never "procured or attempted to procure a visa by fraud or misrepresentation."

In June 1988, petitioner married a naturalized citizen. Shortly thereafter, she obtained temporary resident status and, on May 25, 1989, applied for permanent resident status. Petitioner indicated on the application for permanent resident status that she had never "attempted to procure a visa or *other documentation* by fraud or *by willfully misrepresenting a fact.*" (emphasis added). Several years later, petitioner traveled to El Salvador and returned to the United States in less than thirty days.

In 1994, petitioner requested naturalization. She indicated on her application that she had never "given false testimony for the purpose of obtaining any immigration benefit." However, during the course of the required interview, petitioner admitted that, in the past, she had attempted to gain permanent resident status based on her sham marriage.

Following the petitioner's confession, the INS filed an Order to Show Cause on March 26, 1996 which charged her with a violation of INA section 241(a)(1)(A). The IJ conducted a hearing and issued an oral decision concluding that: (1) deportability had been proven by clear and convincing evidence; (2) the petitioner's trip to El Salvador in 1993 constituted a meaningful interruption that pretermitted the application for suspension of deportation; and (3) voluntary departure in lieu of deportation would be denied. The BIA entered a Final Removal Order on February 5, 2002 affirming the IJ's decision.

Our review of the record persuades us that there is adequate evidence to support the petitioner's removal. In response to the other issues on appeal, we conclude that the deportation is not time-barred and deny remand for consideration of the petitioner's application for suspension of deportation.

■ The petitioner's deportation is not time-barred because the five-year statute of limitations in INA section 246 does not apply to deportations based on causes sep-

arate and distinct from those justifying rescission. In *Bamidele v. INS*, 99 F.3d 557 (3d Cir.1996), we nullified rescission as well as deportation proceedings commenced after the five-year limitation period in section 246 had expired because the INS had prior knowledge of the facts at issue in both the rescission and deportation. *Id.*

In *Bamidele*, the petitioner had married a U.S. citizen and, in 1983, was subsequently granted an adjustment of status based on that marriage. Two years after the adjustment, during an investigation of possible student loan fraud, Bamidele's wife confessed that the marriage was a sham. Despite having that information for five years, the INS did not serve Bamidele with an Order to Show Cause until 1990, asserting at that point that he had obtained his status through fraud and was thus deportable.

We held that, because it was based on the same facts, the deportation in *Bamidele* was subject to the same statutory time bar as the rescission.[1] The INS knew of the sham marriage and subsequent adjustment, but took no action prior to the expiration of the 5–year limitations period. We also concluded that, if "deportation is predicated on something outside the adjustment," there would be "no such bar." *Id.*

Petitioner procured her adjustment based on the misrepresentation that she never attempted to procure a visa or other documentation through fraud. However, as the BIA noted in its Final Removal Order, a separate cause for deportation exists in addition to the 1989 misrepresentation. The petitioner's attempt to procure permanent resident status through a sham marriage rendered her deportable irrespective of her subsequent misrepresentations.

The record indicates that both causes for deportation were properly charged and the Final Removal Order asserted that the 1987 attempt was a separate cause for deportability. As a result, the petitioner's deportation is not time-barred under section 246.

■ In addition to her time-bar argument, petitioner also seeks a remand for further consideration of her application for suspension of deportation. She does not dispute the BIA's conclusion that her trip to El Salvador in 1993 was brief but not innocent. Instead, she argues that she accrued the requisite amount of time after she returned from El Salvador. Petitioner contends that service of the Order to Show Cause submitted on March 26, 1996 did not interrupt her accrual, as would usually happen pursuant to the Stop Time Rule, because she is eligible for an exception to that rule set forth in the Nicaraguan Adjustment and Central American Relief Act ("NACARA").

NACARA exempts Salvadoran aliens who filed an application for asylum with the INS on or before April 1, 1990 from the Stop Time Rule.

The record indicates that petitioner submitted an application for asylum prior to April 1, 1990 but ignored a request from the INS for additional information about the possible hardships she would have faced had she returned to El Salvador. Because she failed to complete the application, petitioner does not qualify for the exception in NACARA.

Allowing petitioner to take advantage of the benefits of NACARA without ever having established the possibility of persecution to the INS in the form of a complete

---

1. *Bamidele* and this case involve the version of section 246 that predated the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

asylum application would inappropriately expand upon the limited exceptions delineated in the Act. Accordingly, the BIA's denial of the petitioner's suspension of deportation application was appropriate and there is no need for remand.

The Petition for Review will be denied.